IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **PLANET GOALIE, INC.,** : | |
| **Plaintiff** : | |
| : | |
| v. : | Civ. No. 1:10-CV-2629 |
| : | |
| **MONKEYSPORTS, INC.,** : | The Honorable Sylvia H. Rambo |
| : | |
| **Defendant** : | |

## M E M O R A N D U M

Before the court are two pending motions. First, is Defendant Monkeysports, Inc.'s ("Monkeysports") motion to dismiss, or in the alternative change venue, for lack of personal jurisdiction. (Doc. 3.) Second, is Plaintiff Planet Goalie, Inc.'s ("Planet Goalie") motion for discovery. (Doc. 17.) For the reasons that follow, Defendant's motion to change venue will be granted and this case will be transferred to the Central District of California and Plaintiff's motion for discovery will be deemed moot.

**I.     Background**

   **A.     Parties**

Plaintiff Planet Goalie is a company that deals in the sale of hockey equipment at the retail level. (Compl. ¶ 6.) Plaintiff is incorporated in Nevada with a principle place of business in Harrisburg, Pennsylvania. (*Id.* ¶ 1.) Defendant Monkeysports is one of the largest retailers of hockey and other sports equipment and is incorporated in California with a principle place of business in Corona, California. (*Id.* ¶¶ 2, 8.) Plaintiff claims this court has both general and specific

jurisdiction over Defendant.  (*Id.* ¶ 4.)  For the reasons that follow, the court disagrees.

### B. Factual Background

The complaint alleges that while Plaintiff was at a hockey show in Las Vegas, Nevada, the owners of Plaintiff met with representatives from two of the largest manufacturers of ice hockey goalie equipment in the United States: Vaughn Custom Sports ("Vaughn") and Reebok/CCM ("Reebok").  (*Id.* ¶¶ 7-9.)  During that meeting, Plaintiff claims that a contract was entered into with Vaughn, and a potential contract was negotiated with Reebok.  (*Id.* ¶¶ 11, 30-32.)  Subsequently, Plaintiff claims that representatives from Monkeysports threatened to decrease business with Vaughn and Reebok if they entered into contracts with Planet Goalie. (*Id.* ¶¶ 16, 39.)  Therefore, Plaintiff claims Defendant engaged in tortious interference with both existing and prospective contractual relations.  (*Id.* Counts I & II.)

Defendant claims that this court lacks both specific and general personal jurisdiction over Defendant, and that the case should therefore be dismissed.  In the alternative, Defendant suggests that venue is improper and this case should be transferred to the Central District of California where Defendant is incorporated and has its principle place of business.  (Mot. to Dismiss, Doc. 3.)  The court agrees that venue here is improper and will transfer this case to the Central District of California.

### C. Procedural History

On March 7, 2011, Defendant filed a motion to dismiss for lack of personal jurisdiction and brief in support.  (Docs. 3, 4.)  On April 11, 2011, Plaintiff

filed a brief in opposition (Doc. 12), to which Defendant replied on April 21, 2011 (Doc. 13).

While this motion was pending, on May 28, 2011, Plaintiff filed a motion for discovery. (Doc. 17.) A brief in support was filed on June 15, 2011. (Doc. 19.) Defendant filed a response on June 23, 2011. (Doc. 20.) Both motions are now ripe for disposition.

## II.      Legal Standard: 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction

"Once [a court's jurisdiction] is challenged, the burden rests upon the plaintiff to establish personal jurisdiction." *Gen. Elec. Co. v. Deutz Ag.*, 270 F.3d 144, 150 (3d Cir.2001) (citing *Mellon Bank (East) PSFS, Nat'l. Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir.1992)). A plaintiff may meet this burden by "establishing with reasonable particularity sufficient contacts between the defendant and the forum state." *Mellon Bank*, 960 F.2d at 1223 (quoting *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Assoc.*, 819 F.2d 434, 437 (3d. Cir.1987)). "A court must take 'specific analytical steps' when determining whether it can assert personal jurisdiction over a non-resident defendant." *Accuweather, Inc., v. Total Weather, Inc.*, 223 F .Supp. 2d 612, 613 (M.D. Pa. 2002) (quoting *Pennzoil Prod. Co. v. Colelli & Assocs., Inc.*, 149 F.3d 197, 200 (3d Cir.1998)).

Personal jurisdiction analysis is more difficult when a defendant's conduct with the forum state is based on internet contacts. "The internet allows businesses and customers to communicate with each other from anywhere in the world. Customers can also place orders from anywhere in the world. Because the internet has no boundaries, a court must consider whether the electronic contacts

between the remote party and the party in the forum state are sufficient to satisfy the 'minimum contacts' element of the personal jurisdiction analysis. *Hershey Co. v. Pagosa Candy Co.*, Civ. No. 1:07-1364, 2008 WL 1730538, at *3 (M.D. Pa. 2008) (referencing G. PETER ALBERT, JR., ET AL., INTELLECTUAL PROPERTY LAW IN CYBERSPACE 2006 CUMULATIVE SUPPLEMENT 14-5 (2006)). Courts have addressed this issue, but first, the traditional personal jurisdiction framework will be discussed.

### III.     Discussion
#### A.     Personal Jurisdiction

A federal district court sitting in Pennsylvania has jurisdiction over non-resident parties to the extent provided by Pennsylvania law. *See* FED.R.CIV.P. 4(e); *see also Mellon Bank*, 960 F.2d at 1221. Pennsylvania's long-arm statute allows a court to exercise jurisdiction over a non-resident defendant "to the fullest extent allowed under the Constitution of the United States and may be based upon the most minimum contact with this Commonwealth allowed under the Constitution of the United States." *See* 42 PA. CONS.STAT. § 5322(b); *see also Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 63 (3d Cir.1984). Accordingly, the reach of Pennsylvania's long-arm statute is "coextensive with the due process clause of the United States Constitution." *Time Share*, 735 F.2d at 63. The due process clause of the United States Constitution requires a non-resident defendant to have certain minimum contacts with the forum state in order for a court in that forum to properly exercise personal jurisdiction. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). General jurisdiction may be exercised over a non-resident defendant when the

defendant has "continuous and systematic" contacts with the forum state. *Int'l Shoe*, 326 U.S. at 318.  Notably however, "the size of the percentage of defendant's total business represented by its contacts with the forum and the substantiality of the absolute dollar amount involved in the contacts with the forum state are generally irrelevant." *Asanov, et al., v. Gholson, Hicks & Nichols, P.A., et al.,* Civ. No. 1:05-2098, 2006 WL 1289308, at *8 (M.D. Pa. 2006) (citing *Provident Nat. Bank v. Ca. Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437-38 (3d Cir. 1987).

However, even if the defendant does not have continuous and systematic contacts with the forum state, the defendant may still be subject to specific jurisdiction in the forum state.  *Deutz Ag*, 270 F.3d at 150 (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-16 (1984)).  Three elements must be established in order to warrant specific jurisdiction.  *Zippo Mfg. Co. v. Zippo Dot Com*, 952 F.Supp. 1119, 1122-23 (W.D. Pa. 1997).  First, the cause of action must "arise[ ] out of the defendant's contacts with the forum." *Helicopteros Nacionales*, 466 U.S. at 414 n. 8.  Second, the defendant must have "purposefully established 'minimum contacts' with the forum." *Burger King v. Rudzewicz*, 471 U.S. 462, 474 (1985) (quoting *Int'l Shoe*, 326 U.S. at 316).  Finally, the exercise of personal jurisdiction must be reasonable, and must not offend "traditional notions of fair play and substantial justice."  *World-Wide Volkswagen,* 444 U.S. at 292 (quoting *Int'l Shoe*, 326 U.S. at 316).

To establish the minimum contacts necessary to assert specific jurisdiction the defendant must have "purposefully availed itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Asahi Metal Indus. Co., Ltd. v. Superior Court of Ca.*, 480

U.S. 102, 109 (1987) (quoting *Burger King*, 471 U.S. at 475). "Defendants who 'reach out beyond one state' and create continuing relationships and obligations with the citizens of another state are subject to regulation and sanctions in the other state for the consequences of their actions." *Zippo*, 952 F.Supp. at 1123 (quoting *Burger King*, 471 U.S. at 473). Specific jurisdiction is established when "the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen*, 444 U.S. at 297. However, specific jurisdiction is not established if the non-resident defendant's conduct in the forum state is "random, isolated or fortuitous." *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984). In addition, mere knowledge that an allegedly harmed plaintiff is located in the forum state will not be sufficient to establish specific jurisdiction. *Metallic Ceramic Coatings, Inc., v. Precision Prod., Inc.*, Civ. No. 00-4941, 2001 WL 122227, at *6 (E.D. Pa. 2001).

### B. Internet Contacts as a Basis for Personal Jurisdiction

Personal jurisdiction becomes more complicated when a defendant's contact with the forum state is primarily done through internet contacts. This court in *Hershey*, went through an in-depth analysis of the recent history of the progression of personal jurisdiction based on internet contacts in this Circuit. 2008 WL 1730538, at *4-6.

This court first outlined the sliding-scale developed in *Zippo*, where a defendant's internet activity was held to be "directly proportion[al] to the nature and quality of commercial activity that an entity conducts over the internet." *Hershey*, 2008 WL 1730538, at *4 (citing *Zippo,* 952 F. Supp. 1124) (internal citations omitted). This court further explained the *Zippo* sliding scales as follows:

> At one end . . . personal jurisdiction is properly exercised over defendants who actively conduct business from a commercial web site. If the defendant's web site allows it to "enter into contracts with residents of a foreign jurisdiction . . . involving the knowing and repeated transmission of computer files over the internet," then the site falls into the "commercial" category. Defendants who maintain a "commercial" web site may be expected to submit to the personal jurisdiction of courts within the forum state. At the other end of the scale are operators of passive web sites that simply make information available to any viewer who may be interested. Operators of these "passive" web sites have not engaged in conduct sufficient to justify the exercise of personal jurisdiction over them. "Interactive" web sites allow the exchange of information between a user and the host computer, and depending on the level of interactivity and the commercial nature of the exchange of information, personal jurisdiction may be proper.

*Id.* Although helpful as an organizational tool to establish the types of internet web sites in existence, the *Zippo* scale is, unfortunately, not terribly useful when it comes to the practical application of personal jurisdiction, as most web sites would appear to fall into the "interactive" category. As such, courts in the past few years have attempted to expand and clarify under what circumstances a defendant may be subject to personal jurisdiction based on internet contacts. Although there is no bright-line rule, a few key developments have been made.

First, "something more" than simply having a website accessible to individuals in the forum state must be shown. *See Accuweather, Inc. v. Total Weather, Inc.*, 223 F. Supp. 2d 612, 616 (M.D. Pa. 2002) (citing to *S. Morantz, Inc. v. Hang & Shine Ultrasonics, Inc.*, 79 F. Supp. 2d 537, 540-41 (E.D. Pa. 1999) (holding that web site and toll-free number were not sufficient to establish personal jurisdiction in Pennsylvania).) Something more can be established if a plaintiff can show a defendant had "non-internet contacts [with the forum state], advertis[ed] in

local publications, [or had] business records of sales in the state." *Morilla v. Laser Spine Inst., LLC*, Civ. No. 2:10-1882, 2010 WL 3258312, at *4 (D.N.J. 2010). "A website that has only information and a generic contact information input form falls at the passive end of the *Zippo* scale." *Id.* at *5. Furthermore, for web sites in the "interactive" category, it must be shown "a web site targets a particular remote jurisdiction . . ." *Hershey*, 2008 WL 1730538, at *5. For example, the Third Circuit held in *Toys "R" Us,* that a website which was technically "commercial and interactive on the *Zippo* scale" did not establish personal jurisdiction because the web site was completely written in Spanish, prices were in Spanish currency, the web site only shipped to Spain, not to the United States. *See id.* at *6 (discussing *Toys "R" Us, Inc. v. Step Two, S.A.,* 318 F.3d 446, 454 (3d Cir. 2003).

As for general jurisdiction, the court in *Koczkodon v. Grand Versailles, LLC, et al.*, 2010 WL 3656037 (E.D. Pa. 2010), held that a "high standard" was needed "to establish the sort of continuing and systematic contacts required for general jurisdiction."[1] *Id.* at *2.

Although internet contacts muddy the water a bit when establishing personal jurisdiction, the court finds that the website in this case was "interactive" in nature and that Plaintiff has simply failed to establish the "something more" needed for specific jurisdiction and has, likewise, not met the heightened burden needed for general jurisdiction.

### C. The Court Lacks Personal Jurisdiction Over Defendant

---

[1] The court had already established that specific personal jurisdiction did not exist because Plaintiff was bringing personal tort claims based on activity which took place in New Jersey. *Id.* at *1.

Planet Goalie has failed to meet its burden of showing that Monkeysports has sufficient "minimum contacts" with this forum or that Monkeysports engages in "systematic and continuous" activities in Pennsylvania.

The complaint alleges that the contact between representatives from Planet Goalie and both Vaughn and Reebok took place in Nevada. The complaint fails to state where the alleged contact between Monkeysports and either Vaughn or Reebok occurred. Plaintiff's brief in opposition to the motion to dismiss states that Monkeysports averaged around nine-percent of its goalie equipment sales to Pennsylvania. In addition, Planet Goalie claims that Monkeysports NJ makes significant sales to Pennsylvania and that the Monkeysports NJ store allows people to add their email to a mailing list. Planet Goalie claims that sales to Pennsylvania dramatically increased after the Monkeysports NJ store was opened.[2] Planet Goalie also claims Monkeysports directly advertised and solicited business in Pennsylvania because it has an "ongoing arrangement" with a company called Pro Ambitions Hockey, Inc. ("Pro Ambitions") and Pro Ambitions holds hockey camps in Pennsylvania, as well as various other states and Canada. Pro Ambitions apparently uses the Monkeysports logo on their hockey camp jerseys.

When Monkeysports NJ opened, it is argued that Monkeysports sent emails to customers advising them of the opening and announcing that the New Jersey store would be hiring. It is further argued that some of these customers reside

---

[2] Plaintiff does not say whether sales to Pennsylvania increased due to orders from Monkeysports or Monkeysports NJ, which is significant as Defendant states that they are separate legal entities and do not share a corporation-shareholder or parent-subsidiary relationship. (Def.'s Br. in Opp. to Pl.'s Request for Jurisdictional Discovery, Doc. 20, at 11.)

in Pennsylvania. In addition, Plaintiff contends that Monkeysports NJ employs Pennsylvania residents and that both stores ship to customers in Pennsylvania.

Not withstanding these arguments, Planet Goalie has failed to show Defendant's contact with Pennsylvania is more than "fortuitous." *See Keeton v. Hustler Magazine, Inc.*, 465 U.S. at 774 (1984) (contact with forum state must not be "random, isolated, or fortuitous.") Defendant has limited sales in Pennsylvania and does not directly and specifically target Pennsylvania. In addition, the percentage of sales in a forum state are generally considered irrelevant. *See Asanov, et al., v. Gholson, Hicks & Nichols, P.A., et al.,* Civ. No. 1:05-2098, 2006 WL 1289308, at *8 (M.D. Pa. 2006). Even assuming that Plaintiff has met its burden of demonstrating that nine-percent of all Defendant's sales occurred in Pennsylvania — a contention that Defendant refutes, arguing a lower percentage of sales — such a showing does not suggest that the website specifically targeted Pennsylvania residents as opposed to just generally providing information about sports equipment and allowing customers some interaction. *See Morantz*, 79 F. Supp. 2d at 542. Nothing on the record or on the website (as viewed by the court) suggests that Pennsylvania residents were targeted in any way. Thus, no evidence of purposeful availment which would establish specific jurisdiction.

Nor is the court convinced that Defendant's advertising at a national hockey camp that operates in Pennsylvania, along with most other states, satisfies the "high standard" needed to establish "continuous and systematic contacts" in Pennsylvania needed for general jurisdiction. *See Koczkodon*, 2010 WL 3656037, at * 1. Indeed, to hold that these activities — a website and hockey camp advertising — were sufficient to confer personal jurisdiction in Pennsylvania would also mean

10

that nearly every other state would have personal jurisdiction. These non-specific and non-targeted contacts are precisely the type of "fortuitous" contacts that fail to establish personal jurisdiction. Because Plaintiff has failed to show "something more" needed to establish specific jurisdiction over an interactive website.

The alleged tortious conduct in this case occurred either: in Nevada, at the trade show convention; in New Jersey, by way of a potentially-related store; or, in some unknown location, when Monkeysports representatives allegedly contacted both Vaughn and Reebok. Furthermore, the court cannot hold that Monkeysports alleged contacts with Pennsylvania gave rise to Planet Goalie's causes of action. The fact that Monkeysports has a website which is accessible to Pennsylvania residents, and advertising on a team jersey of a hockey camp that operates in a majority of U.S. states and Canada,[3] is not sufficient to show that Monkeysports targeted Pennsylvania in any active way. Furthermore, the fact that Planet Goalie technically would have felt the impact of Monkeysports alleged conduct is unpersuasive. Planet Goalie solicited sales at a convention in Nevada, conceivably, Planet Goalie could have been a Monkeysports competitor in any state and Monkeysports did not actively target this forum.

For these same reasons, this court does not have general personal jurisdiction over Defendant because Plaintiff has failed to show Defendant's contact was "continuous and systematic." *Koczkodon*, *supra,* at *2. This is a "high standard" for Plaintiff to establish, *see id.,* and Plaintiff has failed to do so here. A small majority of sales and advertising on a jersey that is potentially used by a hockey camp across the U.S. and Canada do not show the continuous and systematic

---

[3] *See* http://www.proambitions.com/campschedule.htm.

sort of contact needed for the heightened standard required for general personal jurisdiction.

### B. Jurisdictional Discovery

Plaintiff has filed a motion to conduct limited jurisdictional discovery requesting the following: emails between Monkeysports and Monkeysports NJ to third parties concerning Planet Goalie, and, "all internal e-mails, memoranda and/or any other writings within Monkeysports and/or Monkeysports NJ, Inc. (including any of the principals thereof) concerning the fact that Planet Goalie was doing and/or was going to do business in Pennsylvania. (Pl.'s Br. in Supp. of Mot. for Leave to Take Discovery and to File a Supp. Memo. of Law, Doc. 19, at 7.) However, the court fails to see how any of this requested information would establish that this court has proper jurisdiction. Conceivably, Plaintiff might be attempting to establish that Monkeysports NJ is so intertwined with Monkeysports that Monkeysports NJ's contacts with Pennsylvania should somehow be attributed to Monkeysports in California.

None of the requested discovery, including emails and other correspondence, would change the simple fact that Monkeysports and Monkeysports NJ are separately incorporated and, therefore, separate legal entities. Furthermore, Monkeysports NJ is not a party to this action and the court is unwilling to require it to disclose its corporate records, and other potentially confidential material, when it has yet to even be sued. Nothing in the record, or in the requested jurisdictional discovery, convinces this court that Pennsylvania is somehow the correct legal forum for this action. Accordingly, Plaintiff's motion will be deemed moot.

### C. <u>Venue Transfer</u>

The applicable statute for change of venue is 28 U.S.C. § 1404(a). Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." This statute provides district courts with discretion to transfer a civil action "if the transfer is warranted by the convenience of parties and witnesses and promotes the interests of justice." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964). Stated differently, "the purpose of [§ 1404(a)] is to prevent the waste of time, energy, and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Id*. (internal quotations omitted). Although the court has discretion to transfer venue, "a motion to transfer is not to be liberally granted." *Measurement Specialties, Inc. v. Stayhealthy.com*, 275 F. Supp. 2d 638, 640 (E.D. Pa. 2003).

As a threshold question, the court must determine whether the action "might have been brought" in the proposed transferee district. *Van Dusen*, 376 U.S. at 616-17. If this limitation is met, the court must then weigh a list of factors. While there is no definitive list of factors, courts generally consider the following interests : (1) the plaintiff's choice of forum; (2) the defendant's preference; (3) where the claim arose; (4) the convenience of the parties; (4) the convenience of the witnesses, but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; (5) the location of books and records, similarly limited to the extent that the files could not be produced in the alternative forum; (6) the enforceability of the judgment; (7) practical considerations that could make the trial easy, expeditious, or inexpensive; (8) the relative court congestion in the competing courts; (9) the local

interest in deciding local controversies at home; (10) the public policies of the fora; (11) and the familiarity of the trial judge with the applicable state law. *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879-80 (3d Cir. 1995). The burden of showing that these factors warrant transfer rests with the moving party. *Id*. at 879. However, the moving party "is not required to show 'truly compelling circumstances for . . . change . . . [of venue, but rather that] all relevant things considered, the case would be better off transferred to another district.' " *In re United States*, 273 F.3d 380, 388 (3d Cir. 2001) (quoting *In re Balsimo*, 68 F.3d 185, 187 (7th Cir. 1995)) (alterations in original).

In the alternative to dismissal, Defendant has requested that this case be transferred to the United States District Court for the Central District of California under 28 U.S.C. 1406(a), as this is where Defendant is a resident. Plaintiff has asked that, should jurisdiction be found to be lacking in this court, the case be transferred to the United States District Court for the District of New Jersey. The only connection this case has to New Jersey is Monkeysports NJ; however, as previously discussed, Monkeysports NJ is a separate legal entity and not a party to this action. Although a plaintiff's choice of forum is a factor to be considered, the other factors weigh against Plaintiff's request. The allegedly tortious conduct "arose" in Nevada or some unknown location. Although possibly closer for Planet Goalie, the court cannot say that New Jersey is more convenient for the parties, or the potential witnesses, or the court. Neither party has a truly vested interest in having this case transferred to New Jersey, and as the only suggested alternative has been the Central District of California, the case will be transferred there. Because Plaintiff is incorporated in neighboring Nevada and many of the underlying facts allegedly occurred there, the

court finds that the majority of factors weigh in favor of the Central District of California over the Middle District of Pennsylvania or the District of New Jersey. Accordingly, the case will be transferred there.

## IV. <u>Conclusion</u>

For the aforementioned reasons, the court finds that it lacks both specific and general jurisdiction to hear this case. However, the case will not be dismissed but will instead be transferred to the United States District Court for the Central District of California. An appropriate order will issue.

s/Sylvia H. Rambo<br>
United States District Judge

Dated: September 1, 2011.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **PLANET GOALIE, INC.,** :  | |
|     **Plaintiff** : | |
| : | |
| **v.** : | Civ. No. 1:10-CV-2629 |
| : | |
| **MONKEYSPORTS, INC.,** : | The Honorable Sylvia H. Rambo |
| : | |
|     **Defendant** : | |

## O R D E R

For the reasons stated in the accompanying memorandum of law, **IT IS HEREBY ORDERED THAT :**

    1) The motion to dismiss, or in the alternative to transfer venue (Doc. 3), is **DENIED** in part and **GRANTED** in part as follows:

        a) the motion to dismiss (Doc. 3) is **DENIED**.

        b) the motion request to transfer venue is **GRANTED**.  The Clerk of Court is directed to transfer this case to the United States District Court for the Central District of California.

    2)  The motion for discovery (Doc. 17) is deemed **MOOT**.

                                                         s/Sylvia H. Rambo
                                                     United States District Judge

Dated:  September 1, 2011.